IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTOR ANDREW APODACA, SR.,

      Plaintiff,

v.                                      2:16-cv-00096-MV-LF

CORIZON HEALTH CARE, et al.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Victor Andrew Apodaca's motion for a temporary restraining order and preliminary injunction (Doc. 3), filed February 8, 2016; his (second) motion for a temporary restraining order and preliminary injunction (Doc. 13), filed March 14, 2016; his motion for leave to file an amended complaint (Doc. 28), filed on April 24, 2017; and his (second) motion for leave to file amended complaint (Doc. 42), filed on January 4, 2018. Defendant Dr. David Birnbaum filed a response to Apodaca's second motion for leave to amend on February 2, 2018. Doc. 46. Also before the Court is defendant Dr. David Birnbaum's *Martinez*[1] report, including his motion for summary judgment (Doc. 18), filed on May, 14, 2016. Apodaca filed a response to the *Martinez* report on May 31, 2016. Doc. 19. The Honorable Martha Vazquez referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 5.

Having reviewed the submissions of the parties, and being fully advised, I find that Apodaca's motions for a temporary restraining order and preliminary injunction are moot and

---

[1] *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978).

recommend that they be denied. I further find that Apodaca's motions for leave to file an amended complaint are not timely and, therefore, recommend that they be denied without prejudice. Finally, I find that there are no genuine issues of material fact, and that Dr. Birnbaum is entitled to judgment as a matter of law on Apodaca's Eighth Amendment claim for failure to provide adequate medical care. Accordingly, I recommend that Apodaca's complaint be dismissed with prejudice.

I.        <u>Background and Procedural Posture</u>

Apodaca suffers from a variety of medical conditions, including Gulf War Illness,[2] Hepatitis C, diabetes, hypertension, bipolar disorder, and rheumatoid arthritis.[3] Doc. 1 at 5, 10. On August 19, 2015 Apodaca became an inmate at Lea County Correctional Facility ("LCCF") in Hobbs, New Mexico. *See* Docs. 1 at 1; 18-1 at 1. On May 18, 2017, Apodaca filed a notice of change of address informing the Court that he was moved from LCCF in Hobbs, to the Northeast New Mexico Detention Facility ("NENMDF") in Clayton, New Mexico. Doc. 32. Apodaca contends that during his incarceration at LCCF, the staff failed to adequately treat his medical needs. Doc. 1 at 2–5, 9–10. Apodaca filed his complaint for civil rights violations on February 8, 2016. Doc. 1. That same day, Apodaca filed a motion for injunctive relief. Doc. 3. A month later, on March 14, 2016, Apodaca filed a second motion for injunctive relief. Doc. 13.

---

[2] Although Apodaca claims that he received a diagnosis of Gulf War syndrome, there is no indication of such a diagnosis in Apodaca's medical records, and Dr. Birnbaum did not observe any symptoms or combination of symptoms that would lead him to medically diagnose that condition. Doc. 18-3 at 3.

[3] Apodaca also alleges that he suffers from gastritis, irritable bowel syndrome, chronic fatigue syndrome, fibromyalgia, and "P.I." Doc. 1 at 10. There are no medical records that establish Apodaca has been diagnosed with these conditions, and Apodaca does not make any specific claims that he was denied treatment for these particular conditions aside from stating that he suffers from pain symptoms.

On April 28, 2016, the Court dismissed several defendants and many of Apodaca's claims. Doc. 15. Apodaca's only remaining claim is that Dr. Birnbaum and his staff were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Doc. 15 at 11. The Court held Apodaca's motions for injunctive relief (Docs. 3 and 13) in abeyance to the extent that the motions raised Eighth Amendment concerns related to Apodaca's medical care. Doc. 16. The Court ordered Dr. Birnbaum to prepare a *Martinez* report regarding Apodaca's medical care and the issues raised in Apodaca's motions for a temporary restraining order and preliminary injunction. *Id.* Dr. Birnbaum filed his *Martinez* report on May 14, 2016. Doc. 18. In his *Martinez* report, Dr. Birnbaum asks for summary judgment on Apodaca's claim under the Eighth Amendment. Doc. 18. In addition to responding to the *Martinez* report, Doc. 19, Apodaca filed two motions for leave to file an amended complaint. Docs. 28, 42. This report and recommendation addresses all of the outstanding issues.

II.     Apodaca's Motions for Injunctive Relief are Moot.

"The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011). The Court will find mootness "when events outside the litigation make relief impossible." *Id.* There are two kinds of mootness: constitutional mootness and prudential mootness. *Id.* "[T]he constitutional mootness doctrine focuses upon whether a definite controversy exists throughout the litigation and whether conclusive relief may still be conferred by the court despite the lapse of time and any change of circumstance that may have occurred since the commencement of the action." *Id.* at 1024 (internal citation and quotations omitted).

Prudential mootness may apply even where a case is not constitutionally moot if the case "is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand and to withhold relief it has the power to grant." *Id*. (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir.2010)).  In general, prudential mootness applies to cases where, like the instant case, a plaintiff seeks injunctive or declaratory relief.  *Id*.  When a plaintiff requests equitable relief, he or she must demonstrate an adequate basis for that relief.  In other words, a plaintiff must demonstrate "[a] likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law."  *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)).

> When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking declaratory and injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison or released from the prison system, courts are presented with a question of possible mootness.

> Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief.  Because a prisoner's transfer or release signals the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him.  Consequently, courts have routinely dismissed such penitentiary-specific conditions-of-confinement claims as moot.

*Id*. at 1027 (internal citations and quotations omitted).

Apodaca's motions for injunctive relief relate solely to the conditions of his confinement at the LCCF.  In his first motion,  Apodaca alleges that Dr. Birnbaum had taken him off of necessary medications and advised Apodaca that he would only be seen every 90 days regardless of the number of requests for medical care.  Doc. 3 at 1.  Apodaca seeks a temporary restraining order requiring the defendants to have him examined and treated by a "qualified specialist" and a

preliminary injunction requiring them to carry out the specialist's treatment plan. *Id*. at 2. In his second motion, Apodaca alleges that he is being retaliated against for using the court system and asks for a restraining order and preliminary injunction requiring the defendants to abide by the law, give him full access to the courts, and to stop retaliating against him. Doc. 13 at 2–3.

On May 18, 2017, Apodaca filed a notice of change of address informing the Court that he was moved from LCCF in Hobbs, New Mexico, to the NENMDF in Clayton, New Mexico. Doc. 32. Since May of 2017, therefore, Apodaca has not been subject to medical decisions made by Dr. Birnbaum, nor has he been denied access to the courts or subjected to any alleged retaliation by LCCF staff because he no longer resides at that facility. Accordingly, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him.[4] *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997). Because the entry of injunctive relief in Apodaca's favor would have no effect on the defendants' behavior, I recommend that Apodaca's motions for a temporary restraining order and preliminary injunction (Docs. 3 and 13) be denied as moot.

In contrast, Apodaca's claims for damages remain viable "because a judgment for damages would alter the defendants' behavior by forcing them to pay an amount of money they otherwise would not have paid." *Green,* 108 F.3d at 1300. Accordingly, the merits of Apodaca's Eighth Amendment claim are analyzed in section IV below, pursuant to Dr. Birnbaum's motion for summary judgment.

---

[4] The relief sought in Apodaca's second motion for injunctive relief is also moot because his claim for denial to access to the courts has been dismissed by Judge Vazquez, and Apodaca did not amend his complaint to raise a claim for retaliation. Doc. 15 at 6–9, 12.

III.    <u>Apodaca's Motions to Amend Should be Denied</u>.

Rule 15(a) of the Federal Rules of Civil Procedure, which governs the amendment of pleadings, provides in relevant part that "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it." FED. R. CIV. P. 15(a)(1)(A).  Any additional amendments require the opposing party's written consent or the Court's leave.  *See* FED. R. CIV. P. 15(a)(1)(B).  Local Rule 15.1 requires a proposed amended complaint to accompany a motion to amend.  *See* D.N.M.LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend.").

Apodaca filed two motions to amend, Doc. 28, filed April 24, 2017, and Doc. 42, filed January 4, 2018.  In his motions to amend, Apodaca contends that his original complaint "name[s] a John or Jane Doe defendant by et. al," Doc. 28 at 1; Doc. 42 at 1, and that he is seeking amendments to name these additional parties.  This attempt to add parties by amendment is without merit.  First, Apodaca is incorrect.  His original complaint named specific parties and did not name any type of "Doe" defendant or state "et al." in the caption.  Doc. 1 at 1.  Indeed, the form he filled out to instigate this lawsuit instructs, "Do not use *et al*." *Id.*

Second, the motions to amend are untimely and unduly prejudicial to Dr. Birnbaum.  In Dr. Birnbaum's response to Apodaca's second motion for leave to file an amended complaint, he argues that the proposed amendment is based on separate facts and circumstances than those in the original complaint and do not have any relationship to the facts in the original complaint.  Doc. 46 at 4–5.  Further, a *Martinez* report has already been completed, and any amendment at this point would unfairly prejudice Dr. Birnbaum.  *Id.* at 5–6.  I agree with Dr. Birnbaum.

> Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  It is well settled in this circuit that untimeliness alone is a sufficient

reason to deny leave to amend, especially when the party filing the motion has no
adequate explanation for the delay. Furthermore, where the party seeking
amendment knows or should have known of the facts upon which the proposed
amendment is based but fails to include them in the original complaint, the motion
to amend is subject to denial.

*Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365–66 (10th Cir.1993) (internal citations and quotation

marks omitted). To the extent Apodaca is attempting to add allegations and claims against Dr.

Birnbaum, that amendment should not be allowed because Apodaca had the opportunity to

amend his complaint within a month after Judge Vazquez filed her Memorandum Opinion and

Order on April 28, 2016. Apodaca did not timely file an amended complaint or a motion seeking

leave to amend. Instead, Apodaca filed his first motion to amend almost a year after the

expiration of the Court's deadline, on April 24, 2017, and his second motion to amend a year and

nine months after the Court's deadline, on January 4, 2018. As Dr. Birnbaum points out:

> Undue delay is especially relevant here because some of the events underlying the
> proposed second [amended complaint] allegedly occurred in September 2015.
> Thus, Plaintiff knew of the facts well before he filed his original complaint of
> February 8, 2016, and certainly before the Court accepted his first amended
> complaint. Plaintiff has been aware of the events described in the proposed
> second amended complaint, and the identities of all persons allegedly involved in
> those events since October 2016.

Doc. 46 at 6. Apodaca's motions to amend are untimely, and he has not provided any

explanation for the delay.

Third, Apodaca is not seeking to simply amend his complaint; he is attempting to

supplement his complaint. The allegations in his proposed complaints, although still discussing

the alleged lack of medical care, discuss new events and actions of newly named defendants not

alleged in the original complaint. *See* Doc. 28 at 2–7; Doc. 42 at 2–7. The new defendants

would include medical providers Lewis Ortega, Charlet Bradshaw, Emily Collopy, as well as

Centurion, Centurion CEO Steve Wheeler, GEO Executive V.P., Ernesto Alvarez, GEO Risk

Management V.P. Philip Dugger, and GEO Western Region V.P., James Black. *Id.* New events include an untreated molar abscess in October of 2016, removal of his "depression medication" in November of 2016, a broken foot, and lack of insulin. Docs. 28 at 2–3, 6; 42 at 3–4, 6.

Rule 15(d) governs the supplementation of pleadings and it provides as follows:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

FED. R. CIV. P. 15(d). "Rule 15(d) gives trial courts broad discretion to permit a party to serve a supplemental pleading setting forth post-complaint transactions, occurrences or events." *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001). Rule 15(d) motions "are addressed to the sound discretion of the trial court," but such motions "should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants." *Id.*

I find that allowing Apodaca to supplement his pleadings with new parties and allegations pertaining to new events would be unfairly prejudicial to Dr. Birnbaum as well as the newly named defendants. Dr. Birnbaum submitted a *Martinez* report and a motion for summary judgment with regard to Apodaca's sole remaining claim under the Eighth Amendment on May 14, 2016. Doc. 18. Apodaca filed his first motion to amend almost a year after the *Martinez* report, on April 24, 2017. Doc. 28. If the Court allows Apodaca to supplement his pleadings to include new allegations against Dr. Birnbaum, Dr. Birnbaum would be required to respond to the supplemental pleadings, re-review Apodaca's medical records, reevaluate Apodaca's claims, and rewrite the *Martinez* report. At this stage in the proceedings, it is unfair to cause Dr. Birnbaum to start over with this case.

Allowing Apodaca to initiate what is essentially a new lawsuit at this point in the proceedings also would run afoul of the screening process in 28 U.S.C. § 1915. In 1996, Congress significantly amended § 1915, which establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP), *i.e.,* without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). "Under §§ 1915(e)(2)(B)(i) and (ii), a court <u>must</u> screen a complaint filed IFP and dismiss the case at any time if the court determines that the action or appeal is frivolous or malicious or fails to state a claim on which relief may be granted." *Creamer v. Kelly,* 599 F. App'x 336 (10th Cir. 2015) (unpublished) (internal quotation and citation omitted) (emphasis added). In addition, 28 U.S.C. § 1915A, entitled "Screening," requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

Further, the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, requires the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *See* 42 U.S.C. § 1997e(c)(1), *unconst'l on other grounds,* *Siggers-El v. Barlow,* 433 F. Supp. 2d 811, 813 (E.D. Mich. 2006) (unconstitutional to the extent

that it precludes mental or emotional damages as a result of defendant's violation of plaintiff's First Amendment rights).  Apodaca is considered a "prisoner" as that term is defined under the Prisoner Litigation Reform Act, *see* 28 U.S.C. §§ 1915(h), 1915A(c), and he has been granted leave to proceed IFP in this action, Doc. 10.  The defendants named in the proposed amended complaints are employees of a governmental entity.  *See West v. Atkins*, 487 U.S. 42, 54–55 (1988) (a physician under contract with the state to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating prisoner's injury).  Additionally, Apodaca is complaining about the conditions of his confinement.  Thus, his amended complaint must be reviewed under the authority set forth above.

If the Court were to simply allow Apodaca to amend or supplement his complaint with entirely new parties and allegations, it would bypass the screening process required under 28 U.S.C. § 1915.  The newly named parties would be responsible for answering the amended complaint without the benefit of the Court first determining whether Apodaca's claims are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

Although I find that Apodaca should not be able to bring new parties, allegations, and claims into the instant lawsuit, that is not to say that he fails to state a claim.  As discussed above, the merits of the claims raised in the proposed amended complaints have not been screened or analyzed by this Court.  Accordingly, I recommend that Apodaca's motions to amend his complaint (Docs. 28 and 42) be denied without prejudice.

IV.     The Court Should Grant Dr. Birnbaum's Motion for Summary Judgment.

A.  *Standard for Summary Judgement*

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Although all facts are construed in favor of the nonmoving party, it still is the nonmoving party's responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111.  A *Martinez* report is also treated as an affidavit. *Id.*  A court cannot resolve material disputed factual issues by accepting a *Martinez* report's factual findings when they are in conflict with pleadings or affidavits. *Id.* at 1109.  Conclusory allegations, however, without specific supporting facts, have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.

1992).  As is true with all affidavits, statements of mere belief must be disregarded.  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006).

The Court liberally construes Apodaca's filings because he is appearing pro se.  *Hall*, 935 F.2d at 1110.  Nevertheless, a non-moving party still must "identify specific facts that show the existence of a genuine issue of material fact."  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted).  Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion.  *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 557 (10th Cir. 2001).

B.  *Apodaca's Eighth Amendment Claims are Without Merit*.

"A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he knows of and disregards an excessive risk to inmate health or safety."  *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) (internal quotation marks omitted).  Stated differently, prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their deliberate indifference to serious medical needs of a prisoner constitutes unnecessary and wanton infliction of pain.  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

An Eighth Amendment claim of deliberate indifference to serious medical needs requires the plaintiff to demonstrate "both an objective and a subjective component."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  Under the objective inquiry, the "alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Self*, 439 F.3d at 1230 (citing *Farmer v. Brennan*, 511 U.S. 825, 834, (1994)).  Where an Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner "must 'show that the delay resulted in substantial harm' in order to satisfy the objective prong of

the deliberate indifference test." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

The subjective component requires "evidence of the prison official's culpable state of mind." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The subjective component may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* That is, the prisoner must show that the defendant knew "[that the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted); *see Martinez v. Garden*, 430 F.3d 1302, 1304–05 (10th Cir. 2005). The pertinent question is whether the prisoner's symptoms were such that the defendant "knew the risk to the prisoner and chose (recklessly) to disregard it." *Mata*, 427 F.3d at 753.

Apodaca contends that the medical care was defective in several ways. First, he contends that the medical staff only saw him every 90 days "no matter how many sick calls I put in." Doc. 1 at 4; *see also* Doc. 3 at 2.[5] Also, he contends that there has been a delay in filling his prescriptions for high blood pressure and pain medications. Docs. 1 at 5; 3 at 1. Apodaca further alleges that he was denied medication necessary to treat his medical conditions. Docs. 1 at 9– 10; 3 at 1. Specifically, Apodaca contends that Dr. Birnbaum stopped prescribing Neurontin, Lisinopril, simvastatin, and chlorpheniramine. Doc. 3 at 1.

The evidence presented by both Dr. Birnbaum and Apodaca show that since his arrival at LCCF, Apodaca was treated frequently for a variety of ailments. For example, the day after Apodaca arrived at LCCF, on August 20, 2015, he was seen at intake for a medical and mental

---

[5] Although Doc. 3 is a motion and not his complaint, it is based on Apodaca's personal knowledge and has been sworn under penalty of perjury. Doc. 3 at 2. The Court, therefore, will treat Doc. 3 as an affidavit as well.

health review. Docs. 18-1 at 3–4; 18-3 at 2; 19-1 at 10. At that time Apodaca had diabetes, hypertension, high triglycerides, and low HDL, indicating that Apodaca is at high risk of heart attack or stroke. Docs. 18-1 at 1–3; 18-3 at 2; 19-1 at 10. Apodaca also has chronic hepatitis C. Docs. 1 at 10; 18-3 at 2. Apodaca was taking the following medications: Wellbutrin, Remeron, and Neurontin. Docs. 18-1 at 4–5; 18-3 at 2. The medical staff referred Apodaca to receive regular, chronic care treatment for his mental health, and it was noted that he had been diagnosed with a history of PTSD. Doc. 18-1 at 4. Consequently, the staff scheduled Apodaca for a mental health appointment on September 1, 2015. *Id*.

Following this initial assessment, it appears that Dr. Birnbaum and the medical staff were quite responsive to Apodaca's requests for medical care from August 19, 2015, through March 28, 2016.[6] This can best be demonstrated in a chart showing Apodaca's medical history at LCCF:

| Date: | Event/Health Service Request: | LCCF response and treatment: |
|---|---|---|
| 8/19/15 | Apodaca arrives at LCCF. Doc. 18-1 at 1. | |
| 8/20/15 | Apodaca is seen for his intake medical and mental health review. Docs.18-1 at 1–3; 18-3 at 2; 19-1 at 10. | Apodaca has diabetes, hypertension, high triglycerides and low HDL. These conditions resulted in a diagnosis of metabolic syndrome, indicating Apodaca is at a high risk of heart attack or stroke. It is noted Apodaca has chronic hepatitis C. Doc. 18-3 at 2.<br><br>Apodaca also is seen by a mental health professional and a future appointment is scheduled for 9/31/15. Docs. 18-1 at 1–4; 18-3 at 2. |

_____

[6] Neither the *Martinez* report nor Apodaca's response provides medical records beyond March 28, 2016.

| | | |
|---|---|---|
| 8/21/15 | Apodaca submits a health services request form seeking renewal of prescriptions. Docs. 18-1 at 6; 18-3 at 2–3; 19-1 at 11. | The nurse scheduled an appointment for 8/23/15 but he "refused to come." Docs. 18-1 at 6; 18-3 at 2–3; 19-1 at 11. |
| 8/28/15 | Apodaca submits a health services request form regarding medications. Docs. 18-1 at 8-10; 18-3at 3; 19-1at 13. | Apodaca is seen on 8/28/15. Doc. 18-1 at 8–10. Apodaca alleges that he has Gulf War syndrome but there is no indication of that diagnosis in the medical records, and Dr. Birnbaum did not observe any symptoms that would lead him to medically diagnose that condition. Doc. 18-3 at 3. |
| 8/31/15 | | Apodaca underwent a physical examination. Docs. 18-1 at 14–15; 18-3 at 4. |
| 9/1/15 | | Apodaca attends a mental health chronic care appointment. Docs. 18-1 at 16; 18-3 at 4. |
| 9/9/15 | Apodaca submits a health services request form for pain complaints. Docs. 18-1 at 23; 18-3 at 4–5; 19-1 at 15. | Apodaca was triaged by a nurse on 9/10/15, who determined that Apodaca's condition was not urgent, and he was scheduled to be seen by an upper level medical provider on 9/17/15. Docs. 18-1 at 23; 18-3 at 4–5; 19-1 at 15. |
| 9/17/15 | | Apodaca was seen for a medication renewal based on his complaints of arthritis pain. Docs. 18-1 at 24; 18-3 at 5; 19-1 at 12, 15. |
| 10/7/ 15 | Apodaca submits a health services request regarding allergy medications (eye drops and nasal spray). Docs. 18-1 at 28; 18-3 at 5; 19-1 at 14. | Medical staff reviewed the request on 10/10/15 and determined that Apodaca received his eye drops on 9/10/15, and the nasal spray was no longer available. The request was forwarded to upper level medical provider for further review. Docs. 18-1 at 28; 18-3 at 5; 19-1 at 14. |
| 10/10/15 | Apodaca submits a health services request form to formulate a treatment plan for his Gulf War illness. Doc. 19 at 22. | The request was reviewed by a triage nurse on 10/12/15. Doc. 19 at 22. On 10/15/15, it appears that Apodaca refused treatment based on his 10/10/15 request. Doc. 19-1 at 1. |

| | | |
|---|---|---|
| 10/16/15 | | Apodaca is seen for mental health treatment. At that time he was doing "pretty good" and taking all of his medications. Docs. 18-1 at 30; 18-3 at 5. |
| 10/21/15 | Apodaca submits a health services request form regarding allergy medications. Docs. 18-2 at 1; 18-3 at 6; 19-1 at 16. | Medical staff notes that prescriptions have expired and they scheduled an appointment for 10/26/15.[7] Docs. 18-2 at 1; 19-1 at 16. |
| 11/2/15 | Apodaca submits a health services request for prescription renewal. Docs. 18-2 at 4; 18-3 at 6; 19-1 at 17. | Medical staff scheduled an appointment for Apodaca for 11/9/15.[7] Docs. 18-2 at 4; 18-3 at 6; 19-1 at 17. |
| 11/6/15 | Apodaca submits a health services request regarding his eyesight. Docs. 18-2 at 5; 18-3 at 6; 19-1 at 18. | Medical staff scheduled an appointment for Apodaca for 11/16/15.[7] Docs. 18-2 at 5; 18-3 at 6; 19-1 at 18. |
| 11/23/15 | Apodaca submits a health services request form regarding allergy medications, pain in his back, and blurred vision. Docs. 18-2 at 6; 18-3 at 6; 19-1 at 20. | Apodaca was already scheduled for his chronic care appointment on 11/27/15, and was to be seen at that time. Docs. 18-2 at 6; 18-3 at 6–7; 19-1 at 20. The appointment was moved to 11/30/15.[7] Doc. 18-2 at 6-7; 18-3 at 7. |
| 11/29/15 | Apodaca submits a health services request form for a cut on his left big toe. Doc. 19-1 at 21. | Apodaca is seen and treated on 12/1/15, and an appointment was made for 12/7/15. Doc. 19-1 at 21. |
| 12/1/15 | | Apodaca attended a mental health appointment. Docs. 18-2 at 8–9; 18-3 at 7. Dr. Nielson advised Apodaca regarding the discontinuance of gabapentin (Neurontin) used by Apodaca for pain relief. Dr. Nielson referred Apodaca to his medical primary care physician for a prescription for neuropathy. Other prescriptions were renewed. *Id.* |

[7] There is no indication in the medical records that Apodaca attended the appointments set by the medical staff on these dates. Doc. 18-3 at 6. Apodaca contends that he never missed an appointment. Doc. 19 at 5. Because all facts are to be construed in favor of Apodaca for summary judgment purposes, the Court will construe the facts to establish that Apodaca attended the appointments that were scheduled following his health service requests on these dates.

| | | |
|---|---|---|
| 12/7/15 | | Apodaca attends a chronic care appointment. Docs. 18-2 at 9–10; 18-3 at 7–8. A nurse practitioner discontinues Mobic to treat Apodaca with a different NSAID[8] to see if it provided him more relief for his pain complaints. *Id.* |
| 12/12/15 | | Apodaca attends a diabetic eye exam. Doc. 18-2 at 11; 18-3 at 8. |
| 1/2/16[9] | Apodaca submits a health services request form seeking an appointment for being removed from Neurontin. Docs. 18-2 at 14; 18-3 at 8. | The nurse called Apodaca on 1/4/16, then referred him to Dr. Birnbaum to discuss the matter at an upcoming appointment on 1/11/16. Docs. 18-2 at 14; 18-3 at 8. |
| 1/5/16 | Apodaca submits a health services request form seeking renewal of cholesterol and high blood pressure medications. Apodaca contends that he has not had these medications for two months. Docs. 18-2 at 15; Doc. 18-3 at 8. | The triage nurse notes the prescriptions are expired and that Apodaca has an appointment on 1/11/16. Docs. 18-2 at 15; 18-3 at 8. |
| 1/11/16 | | Dr. Birnbaum renews Apodaca's cholesterol and high blood pressure medications and they were received by Apodaca on 1/18/16. Docs. 18-2 at 9, 21; 18-3 at 8. |
| 1/12/16 | Apodaca submits a health services request form complaining that Dr. Birnbaum removed him from his medications and refused to see him. Doc. 18-2 at 16; 18-3 at 9. | Apodaca was seen by medical staff on 1/13/16. Doc. 18-2 at 16. The nurse told Apodaca that he was not receiving Neurontin because he did not have a diagnosis for neuropathy. |

---

[8] Nonsteroidal anti-inflammatory drugs (NSAIDs) are some of the most commonly used pain medicines in adults. They are also a common treatment for chronic (long-term) health problems, such as arthritis (rheumatoid arthritis, osteoarthritis, and others) and lupus. https://www.rheumatology.org/I-Am-A/Patient-Caregiver/Treatments/NSAIDs, last visited February 7, 2018.

[9] The health services request form is dated "1-2-15," but that date is obviously a typo because Apodaca did not arrive at LCCF until 8/19/15.

| | | |
|---|---|---|
| | | Dr. Birnbaum explains in his affidavit that Apodaca does complain of neuropic pain but this condition is not definitively confirmed. Regardless, however, Apodaca was not prescribed Neurontin because of the NMCD (New Mexico Corrections Department) directive to not do so because of the high risk of abuse of this drug. Apodaca was provided other medications to address his pain complaints. Doc. 18-3 at 9. |
| 1/19/16 | Apodaca submits a health services request form complaining of pain in his lower back, pelvis, foot, neck, hands, feet, and joints. Docs. 18-2 at 17; 18-3 at 9. | Apodaca was seen on 1/20/16 and informed of why he was not being prescribed Neurontin. Apodaca had no new or additional problems. Docs. 18-2 at 17; 18-3 at 9. |
| 3/1/16 | | Dr. Nielson sees Apodaca for a mental health chronic care visit. Apodaca indicated he was feeling fine and had no problems with his psychiatric medication. Dr. Nielson renewed Apodaca's prescriptions and scheduled another appointment in 12 weeks. Docs. 18-2 at 18, 18-3 at 9. |
| 3/14/16 | | Apodaca attends a chronic care appointment with Dr. Birnbaum. At that time, Dr. Birnbaum prescribed yet another medication to address Apodaca's pain symptoms and scheduled another chronic care visit. Docs. 18-2 at 27–28, 18-3 at 10. |
| 3/21/16 | | Dr. Birnbaum referred Apodaca to the infectious disease nurse for evaluation of hepatitis C. At the time Dr. Birnbaum wrote the affidavit, Apodaca was waiting to be scheduled for evaluation. Docs. 18-2 at 28; 18-3 at 10. |

| 3/28/16 | Apodaca submitted a health services request form seeking renewal of all of his medications. Docs. 18-2 at 29, 18-3 at 10. | All medications were approved for renewal except Apodaca's prescription for eye drops was pending. At the time of Dr. Birnbaum's affidavit, Apodaca was receiving all medications prescribed for him on 3/1/16 and 3/14/16. Docs. 18-2 at 29; 18-3 at 10. |
|---|---|---|

Apodaca cannot establish either the objective or subjective component of his Eighth Amendment claim. First, he does not establish the objective prong because he fails to establish that he suffered any substantial harm that resulted in a lifelong handicap, permanent loss, or considerable pain. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) ("The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain."). Although Apodaca has medical conditions that require treatment, there is no indication that Dr. Birnbaum or his staff failed to provide treatment. As seen from the chart above, LCCF was responsive, usually within a few days, of Apodaca's request for medical services, and treated his chronic conditions. Apodaca's chronic conditions have remained stable and have not presented an urgent or emergent care situation, despite alleged delays in getting prescriptions filled or being seen by a medical care provider.

Even if Apodaca's complaints of pain could establish the objective component, he cannot establish the subjective component. That is, Apodaca cannot establish that he faced a substantial risk of harm that was known to Dr. Birnbaum and his staff, and that Dr. Birnbaum or his staff disregarded that risk or failed to take reasonable measure to abate it. *Callahan*, 471 F.3d at 1159. Neither Dr. Birnbaum nor his staff acted or failed to act despite their knowledge of a substantial risk of serious harm to Apodaca.

In appears Apodaca's primary complaint regarding his medical care is that he was taken off Neurontin (gabapentin).  *See* Docs. 1 at 10; 1-2 at 18; 1-3 at 10; 1-5 at 1–2; 3 at 1; 18-2 at 14; 18-3 at 8; 19 at 2, 6; 19-2 at 13–14; 19-4 at 12; 19-5 at 9–10; *but see* 19-4 at 11 (Apodaca's inmate grievance form in which he insists that "it's not about the Neurontin itself, it's about violating my 8th Amendment right to be free from cruel and [unusual] punishment by one not consulting with me and replacement of said medication . . . .").[10]  Dr. Nielson advised Apodaca that he was going to discontinue gabapentin as a therapeutic option.  Docs. 18-2 at 8; 18-3 at 7.  Dr. Birnbaum explains that he understood that "due to multiple instances of diversion and abuse of gabapentin in the prison setting, NMCD directed that this particular medication was no longer a treatment option."  Doc. 18-3 at 7.  The medical staff explained to Apodaca why he was no longer allowed Neurontin, and he was provided with other medications to address his pain complaints.  *Id*. at 7–9.  While Apodaca disagreed with this prescribed course of treatment, he continued to be treated for his pain complaints and, therefore, fails to state a constitutional violation for removing Neurontin as a treatment option.  *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation").

The undisputed material facts establish that neither Dr. Birnbaum nor his staff was deliberately indifferent to Apodaca's serious medical needs.  Dr. Birnbaum is entitled to judgment as a matter of law.  Accordingly, I recommend that Apodaca's complaint be dismissed with prejudice.

---

[10] Dr. Birnbaum testifies in his affidavit that when medical staff saw Apodaca on January 13, 2016, he told them that he would dismiss his complaints regarding his medical care if his Neurontin was re-instated.  Doc. 18-3 at 9.  Apodaca vehemently denies that he ever said such a thing.  Doc. 19 at 5.  Regardless, from the statements in his filings, it is clear Apodaca is frustrated that he was unable to get Neurontin while he was incarcerated at LCCF.

V.    Recommendation

For the reasons stated above, I recommend that:

1) Apodaca's motion for a temporary restraining order and preliminary injunction (Doc. 3),
   filed February 8, 2016, and his (second) motion for a temporary restraining order and
   preliminary injunction (Doc. 13), filed March 14, 2016, be DENIED as moot.

2) Apodaca's motion for leave to file an amended complaint (Doc. 28), filed on April 24,
   2017, and Apodaca's (second) motion for leave to file amended complaint (Doc. 42),
   filed on January 4, 2018, be DENIED without prejudice;

3) Defendant Dr. David Birnbaum's motion for summary judgment (Doc. 18), filed on May,
   14, 2016, be GRANTED; and

4) Apodaca's complaint (Doc. 1), filed February 8, 2016, be DISMISSED with prejudice.

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a
copy of these Proposed Findings and Recommended Disposition, they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C).  A party
must file any objections with the Clerk of the District Court within the fourteen-day period if that
party wants to have appellate review of the proposed findings and recommended disposition.  If
no objections are filed, no appellate review will be allowed.

Laura Fashing
United States Magistrate Judge